1
2
3
4                     UNITED STATES DISTRICT COURT
5                          DISTRICT OF NEVADA
6                                 * * *
7   WESLIE MARTIN,                          Case No. 2:18-cv-02426-RFB-NJK
8                  Plaintiff,                              ORDER
9          v.
10  LONA, et al.,
11                 Defendants.
12
13      **I.      INTRODUCTION**
14          Before the Court are three motions: Defendant Efrain Lona ("Defendant")'s Motion for
15  Summary Judgment (ECF No. 93); Plaintiff Weslie Martin ("Plaintiff")'s Amended Motion for
16  Summary Judgment (ECF No. 98), and Plaintiff's Motion for Reconsideration of the Court's Order
17  (ECF No. 100) dismissing all claims against Defendant William Wharton (ECF No. 101). For the
18  reasons. For the reasons stated below, Defendant's Motion for Summary Judgment is granted in
19  part and denied in part, Plaintiff's Motion for Summary Judgment is denied, and Plaintiff's Motion
20  for Reconsideration is granted.
21
22      **II.     PROCEDURAL BACKGROUND**
23          On December 26, 2018, Plaintiff commenced this case by filing an application to proceed
24  in forma pauperis to which he attached a proposed complaint.  ECF No. 1-1.  On August 30, 2019,
25  Plaintiff filed a preliminary injunction and temporary restraining order.   ECF Nos. 3, 4.   On
26  October 16, 2019, Plaintiff filed a Motion for Appointment of Counsel.  ECF No. 14.  On February
27  5, 2020, Plaintiff filed a Motion to Amend the Complaint.  ECF No. 17.  At that point, the original
28  complaint had not been screened.

The next day, February 6, 2020, the Court screened Plaintiff's complaint, deferred ruling on Plaintiff's in forma pauperis application, and stayed the case for ninety days to allow the parties a chance to settle the dispute. ECF No. 18. The Clerk filed the screened complaint. ECF No. 19. The same day, Plaintiff filed an amended complaint. ECF No. 17. Also on February 6, 2020, the Court denied Plaintiff's motions for injunctive relief and his motion to amend his Complaint without prejudice. ECF No. 20.

The Inmate Early Mediation Conference took place on October 16, 2020. ECF No. 29. A settlement was not reached. Id. On October 19, 2020, the Court granted Plaintiff's application to proceed in forma pauperis and lifted the stay. ECF No. 31. On November 16, 2020, Plaintiff filed a Motion to Compel. ECF No. 33. Specifically, Plaintiff requested that the Court require the Attorney General's Office to accept service on behalf of all Defendants. Id.

On December 17, 2020, Defendant Lona filed a Motion to Dismiss the Complaint. ECF No. 35. On December 30, 2020, the Court granted Plaintiff's Motion to Compel in part, requiring the Nevada Attorney General's office to either file a notice either (1) attesting that it could not locate officers Dubree or Warden after a diligent search or (2) submitting the names and last known addresses of these defendants, ex parte, and under. On January 11, 2021, the Attorney General's office complied with this Court order. ECF No. 43. On December 17, 2020, Plaintiff filed a second Motion for Preliminary Injunction. ECF No. 36. On February 10, 2021, Plaintiff filed a Motion to Correct the Names of All Defendants. ECF No. 47.

On March 9, 2021, the Court granted Plaintiff's Motion and ordered the Clerk to change the Names of "Officer Dubree" and "Officer Warden" on the Complaint to Mark Dubree and William Wharton, respectively. ECF No. 48. The order further directed service of the summons under seal by the U.S. Marshal's office. Id. On April 16, 2021, Plaintiff filed a Motion for entry of Clerk's Default as to Defendants Dubree and Wharton. ECF No. 52. On April 21, 2021, Defendant Lona filed a Notice of Plaintiff's non-opposition to the pending Motion to Dismiss. ECF No. 53. On July 22, 2021, Plaintiff filed a Motion to Begin the Discovery Process. ECF No. 55. On June 25, 2021, The Court dismissed all claims against Dubree and Warden without prejudice for failure to comply with service requirements pursuant to Fed. R. Civ. P. 4(m). ECF

1    No. 56.    On June 30, 2021, Plaintiff filed a Motion for Reconsideration of the Court's Order

2    dismissing these defendants from the lawsuit.  ECF No. 57.

3         On July 17, 2021, the Court granted Defendant Lona's Motion to Dismiss (ECF No. 25)

4    and dismissed all claims seeking damages from individual defendants (in their official capacities).

5    ECF No. 58.  The Court's July 17, 2021 Order further denied Plaintiff's Motion for Preliminary

6    Injunction (ECF No. 36).  Id.  On July 23, 2021, the Court granted Plaintiff's Motion to Begin the

7    Discovery Process (ECF No. 55).  ECF No. 59.   On July 28, 2021, the Court returned Plaintiff's

8    request for production of documents, that he filed with the Court, informing him that such

9    documentation was not to be shared with the Court.  ECF No. 60.

10        On August 4, 2021, Defendant Lona answered the Complaint.  ECF No. 61.  On August 4,

11   2021, Plaintiff filed a "Motion for Summary Judgment / Default Judgment in part."  ECF No. 62.

12   On August 30, 2021, Plaintiff filed a Notice of Defendant's Non Opposition to his motion.  ECF

13   No. 63. On July 7, 2021, Plaintiff filed a Motion to Compel Discovery.  ECF No. 64.   On

14   September 8, 2021, Defendant Lona sought an extension of time to file opposition to Plaintiff's

15   Motion for Summary Judgement. ECF No. 65. On September 13, 2021, Plaintiff filed a second

16   Motion to compel Discovery.  ECF No. 66.  On September 20, 2021, the Court granted Defendant's

17   request for an extension of time and ordered Defendant Lona's response to Plaintiff's Motion for

18   Partial Summary Judgment to be filed by September 24, 2021.  ECF No. 68.

19        The Court denied Plaintiff's Motions to Compel on October 28, 2021 without prejudice.

20   The Court warned the parties that it would consider sanctioning the parties if they were unable to

21   meet and confer in good faith.  ECF No. 75.  On November 4, 2021, Plaintiff filed a Notice of

22   Discovery Requests.  ECF No. 76.  On November 9, 2021, Plaintiff filed a Notice of Attempted

23   Meet and Confer. ECF No. 78.

24        On November 29, 2021, the Court held a hearing on the following Motions: Plaintiff's

25   Moton for Entry of Clerk's Default (ECF No. 52), Plaintiff's Motion for Reconsideration of the

26   Court's prior Order (ECF No. 57), and Plaintiff's Motion for Partial Summary Judgment.  ECF

27   No. 82.  At that hearing, the Court granted Plaintiff's Motion for Reconsideration (ECF No. 52)

28   and found Plaintiff had complied with all service requirements.  Id.  The Court reinstated the claims

against William Wharton and Mark Dubree and granted Plaintiff's Motion for Clerk's Default as to these defendants (ECF No. 52).  Id.  The Court further denied Plaintiff's Motion for Partial Summary Judgment as premature, and ordered that Plaintiff receive a paper copy of his medical records by December 10, 2021.  Id.

On December 2, 2021, Plaintiff filed a Motion for Default Judgement.  ECF No. 83.  On December 23, 2021, Plaintiff filed a Notice on the results of the meet and confer held on December 22, 2021.  ECF No. 86.  On December 27, 2021, Defendants filed a Notice Regarding the Court's Minute Order.  ECF No. 87.  On January 6, 2022, Plaintiff filed a Notice to the Court that Discovery had been completed.  ECF No. 88.  On February 15, 2022, the Court granted Defendant Lona's request to extend the dispositive motion deadline to March 21, 2022.  On March 21, 2022, Defendant Lona filed a Motion for Summary Judgement.  ECF No. 93.  On March 23, 2022, Plaintiff filed his response to Defendant Lona's motion.  ECF No. 95.  Plaintiff also filed miscellaneous exhibits to his Complaint (ECF No. 19) the following day.  ECF No. 96. Defendant Lona filed his reply in support of his motion on April 6, 2922.  ECF No. 97.  On April 8, 2022, Plaintiff filed an Amended Motion for Summary Judgment.  ECF No. 98.  On April 29, 2022, Defendant Lona filed his Response.  ECF No. 99.

On May 4, 2022, the Court dismissed the action without prejudice as to Defendant William Wharton.  ECF No. 100.  On May 9, 2022, Plaintiff filed a Motion for Reconsideration of the Court's May 4, 2022 order (ECF No. 100).  ECF No. 101.  On August 4, 2022, the Court denied Plaintiff's Motion for Default Judgment.  ECF No. 102.  On January 24, 2023, the Court set a hearing on all pending motions.  ECF No. 104.  The Hearing was held on February 7, 2023.  ECF No. 106.  The Court took the pending motions under submission.  Id.  This Order follows.

### III.    FACTUAL BACKGROUND

For the purposes of this motion, the Court finds the following facts to be undisputed:

Plaintiff is currently housed at Ely State Prison but was previously housed at High Desert State Prison (HDSP).  Plaintiff was incarcerated at HDSP from April 6, 2016, to February 12, 2018.  Plaintiff returned to NDOC custody on September 13, 2018.  ECF No. 93-1.

4

1        On January 30, 2018, thirteen days before Plaintiff's release, Lona reported a spontaneous

2    use of force on Plaintiff after conducting a random cell search in Plaintiff's cell.  ECF No. 93-2.

3    Lona ordered Plaintiff and his cellmate to place their hands on the wall.  Id.  While Lona was

4    placing Plaintiff in handcuffs, Plaintiff was shouting various statements.  Id.  Lona then took

5    Plaintiff to the ground.  Id.  On the floor, Plaintiff yelled profane statements to Lona, and asked

6    Lona to take him out of his handcuffs.  Id.  Plaintiff was taken to segregation.  Id.  A release of

7    liability for refusal of health care form was completed on January 30, 2018.  ECF No. 93-4.

8    Plaintiff did not sign this form.  Id.  There is no treatment listed as being offered.  Id.  Instead, the

9    area related to  "health care treatment . . . refused at this time" is marked "Other[,] Describe;" no

10   description was provided by the officer or NDOC employee preparing the form.  Id.

11       Plaintiff was released from custody on February 12, 2018.  Plaintiff returned to custody on

12   September 13, 2018.  On November 5, 2018, two months after arriving in custody for the second

13   time, Plaintiff filed a grievance related to the January 30, 2018 incident.  Plaintiff's Grievance

14   explains that he "came back to [his] cell to find everything completely trashed . . . I immediately

15   noticed my previous lawsuit paperwork in the toilet along with grievance receipts, and paperwork

16   from my case."  Plaintiff's grievance goes on to state that after the incident, he was "taken to the

17   hole" and that he was then told "all [his] property had been lost including legal/personal property."

18   The Grievance was denied on November 14, 2018 for being untimely because it was filed over six

19   months after the incident.

20       The Court finds that the parties dispute the following facts in relation to the January 30,

21   2018 incident: whether, during the cell search, Plaintiff's legal papers and court documents had

22   been placed in a toilet; whether Plaintiff and his cellmate stood at the top of the stairs shouting and

23   using profane language complaining of the state of their cell after the random cell search; whether

24   Plaintiff complied with Lona's initial request that he place his hands on the wall; whether, while

25   being handcuffed, Plaintiff complained of the tightness of the handcuffs; whether Plaintiff used

26   profane statements while in restraints or being placed in restraints by Lona and if so, whether these

27   statements were threatening; whether Lona struck Plaintiff in the face and if so, how many times;

28   whether and how Lona threw Plaintiff on his back; whether Lona asked Plaintiff whether Lona

tried to place Plaintiff in a headlock; whether Lona asked Plaintiff to get down to his knees, and if so when; whether the Plaintiff complied with that request, if it was made; when and how other officers responded to the scene; why Lona did not file a report after the incident; whether medical teams were called and by whom; what care was offered and visible signs of injuries at the time medical staff arrived, if they did arrive on the scene; whether Plaintiff requested an emergency grievance form after the incident while in segregation, and when Plaintiff was placed in segregation.

## IV.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).   If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).  It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### B.  Eighth Amendment Excessive Force Claim

The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case, prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citations and quotation marks omitted).  See also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013).

6

The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2) the need for the use of force; (3) the relationship between the need and the level of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force used. Furnace, 705 F.3d at 1028-29 (citation and quotation marks omitted).

The extent of the injury suffered by the inmate or the "objective component" of the Eighth Amendment analysis, is "contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (citation omitted). "In the excessive force context . . . . [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9.

### C. Eighth Amendment Deliberate Indifference to a Serious Medical Need Claim

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

## V.   DISCUSSION

The Court addresses the parties' cross Motion for Summary Judgment and then turns to Plaintiff's Motion for Reconsideration.

### A. Plaintiff's Motion for Summary Judgment

Although Plaintiff presents various arguments in his moving papers, and in his sworn declarations in the record, he has not shown he is entitled to summary judgment as to his two claims. Furthermore, Plaintiff has affirmatively presented to the Court that he did not experience any difficulties during discovery. See ECF No. 88. Plaintiff offers medical documents from 2019 to demonstrate the scope of his back injuries. Plaintiff's informal grievance form, filed November 5, 2018, is the only document in the record that Plaintiff has signed under penalty of perjury, outside of the Complaint. Plaintiff is not entitled to summary judgment based purely on the record before the Court.

### B. Defendant Lona's Motion, for Summary Judgment

Defendant Lona argues that the Court should grant its Motion for Summary Judgment for three reasons. First, Plaintiff did not exhaust all available administrative remedies. Second, Plaintiff is unable to establish the required elements of excessive force because Plaintiff suffered no injury and there was no sadistic or malicious purpose to Defendant Lona's actions. Finally, Lona was not deliberately indifferent to Plaintiff's medical need because Plaintiff suffered no injury and refused medical treatment. The Court considers each of these arguments in turn.

#### a. Exhaustion of Administrative Remedies

Defendant first argues that the Court should grant its Motion for Summary Judgment

because Plaintiff has failed to exhaust administrative remedies.  The issue of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.  It is Defendant's burden of proving that an available administrative remedy was unexhausted by the inmate.   Id. at 1172.   Where circumstances render administrative remedies "effectively unavailable," an inmate's failure to exhaust is excused. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010), superseded by statute, Cal. Code Regs. tit. 15, § 3084.2.  Although California prison regulations were changed after the Ninth Circuit's ruling in Sapp, that case remains binding precedent as to what a prisoner must do to put prison officials on "adequate notice of the problem for which the prisoner seeks redress" and what factors determine whether administrative remedies were "effectively unavailable." Id.

Defendant Lona argues that the claim is unexhausted under AR 740.05(6) because Plaintiff has failed to state a requested remedy, when prison regulations required him to do so.  Plaintiff does not explicitly describe the remedy he seeks in his grievance, but he does explain that he does not feel comfortable with Defendant Lona after the incident and describes the incident in detail.

AR 740.05(6) states in relevant part:

> "All grievances submitted should also include the remedy sought by the inmate to resolve this claim.
> > A. Failure to submit a remedy will be considered an improper grievance shall be DISMISSED. the grievance will then be returned to the inmate using Form DOC-3098, Improper Grievance Memorandum, except any grievance or portion of a grievance that alleges sexual abuse."

The Court finds that this case is similar to Sapp.  In that case, the Ninth Circuit set forth a standard for evaluating exhaustion: "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp, 623 F.3d at 824 (citing Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)).  In Sapp, and in Griffin, the prison regulations required a summary of the

9

1    issues raised and the remedy requested.  AR 740.05(6) is similar, and Plaintiff's grievance raised

2    the background surrounding the incident, the force used against him, his reasons for believing such

3    force was uncalled for, and his fear that he would be harmed again by Defendant Lona after the

4    incident unless they were separated.  Plaintiff's grievance exhausts his claim because it clearly put

5    NDOC on adequate notice of the problem for which [Plaintiff] seeks redress.  <u>Sapp</u>, 623 F.3d at

6    824; <u>Jones v. Bock</u>, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

7           In light of these facts, the Court must next consider whether the grievance was properly

8    screened.  Here, the Court finds ambiguities that do not support Defendant Lona's position.

9    Defendant Lona does not explain how the six-month period to file an informal grievance is

10   calculated *in this case*, given that Plaintiff was released a mere two weeks after the incident, and

11   returned to custody after the six month period had passed.  Furthermore, to the degree the grievance

12   could have been refiled for failure to state a remedy, it was not made clear in the improper

13   grievance form.

14          For these reasons, the Court does not find that Defendant Lona has met his burden of

15   showing that Plaintiff failed to exhaust administrative remedies, as a matter of law.

16                          **b.  Excessive Force Claim**

17          The standard for an excessive force claim is clear. When prison officials are accused of

18   using excessive force, the question for the Court is ". . . whether force was applied in a good-faith

19   effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v.</u>

20   <u>McMillian</u>, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); <u>Whitley v. Albers</u>, 475 U.S.

21   312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Courts consider five factors in making this

22   determination: **(**1) the extent of the injury suffered by the inmate; (2) the need for the use of force;

23   (3) the relationship between the need and the level of force used; (4) the threat reasonably

24   perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force

25   used. <u>Furnace</u>, 705 F.3d at 1028-29 (citation and quotation marks omitted).

26          The extent of the injury suffered by the inmate or the "objective component" of the Eighth

27   Amendment analysis, is "contextual and responsive to 'contemporary standards of decency.'"

28   <u>Hudson</u>, 503 U.S. at 8 (citation omitted). Here, the parties dispute what action was taken by Lona,

and if and how Plaintiff antagonized, threatened, or provoked him. Plaintiff provides sworn statements that Lona struck him in the face twice, put him in a headlock, grabbed him by the ankles to take him down to the floor. ECF No. 93-5.  Lona then flipped Plaintiff onto his back and placed his knee in Plaintiff's back until he was relieved.  Id.  Plaintiff states that he had complied with Lona's orders to get handcuffed, by placing his hands on the wall, and then behind his back, as ordered. Id. The trigger for the altercation, in addition to the random cell search that left Plaintiff's cell "trashed," was his complaint to Lona that the cuffs were on too tight.  Id.

Lona argues that the officer reports associated with the incident tell a different story, but that there is no dispute of material fact that could allow the Court to rule in Plaintiff's favor. Specifically, Lona argues that despite the factual disputes in this case, the Court can rule as a matter of law that these facts do not support an Eighth Amendment claim for excessive force because Plaintiff suffered no injury.  Lona argues that Plaintiff's sworn statement in his informal grievance does not mention that he was offered medical care, but he does admit in his briefing that he refused to sign a waiver for liability for refusal to receive medical care. Lona next argues that he was threatened by Plaintiff, who was verbally antagonistic; just because Plaintiff was in restraints does not negate the fact that his behavior was reasonably perceived as a threat.

It is unclear that this was an emergency based on the undisputed facts. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc) (finding the absence of an emergency is probative of whether force was applied maliciously or sadistically). There is also a dispute as to the reason why the waiver is not signed. The Court finds a reasonable juror could conclude that Plaintiff refused to sign the waiver because he was not offered medical care in the first place, and that based on Plaintiff's verified complaint Lona physically harmed Plaintiff in myriad ways that reasonably required medical care after the incident. The parties dispute the actions Plaintiff and Lona took during the January 30, 2018 incident, which are prerequisites to analyzing the remaining Hudson factors. Therefore, the Court denies Lona's motion as to Plaintiff's excessive force claim.

### i.  Qualified Immunity

Lona finally argues that he is entitled to qualified immunity.  The qualified immunity inquiry has two prongs: "(1) whether, taken in the light most favorable to the party asserting the

1    injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so,

2    whether the right was clearly established in light of the specific case." Robinson v. York, 566 F.3d

3    817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed.

4    2d 272 (2001)).

5         Under the second prong, courts "consider whether a reasonable officer would have had fair

6    notice that the action was unlawful." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014)

7    (internal quotation marks omitted). The Ninth Circuit has "never required a prior case on all fours

8    prohibiting that particular manifestation of unconstitutional conduct to find a right clearly

9    established." Torres v. City of Madera, 648 F.3d 1119, 1129 (9th Cir. 2011) (citation omitted)

10   (internal quotation marks omitted). It is enough that officers have "fair warning" that their conduct

11   is unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002). In deciding a claim of qualified immunity

12   where a genuine issue of material fact exists, the court accepts the version asserted by the non-

13   moving party. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013); Coles v. Eagle,

14   704 F.3d 624, 629 (9th Cir. 2012).  Summary judgment must be denied where a genuine issue of

15   material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metro.

16   Police Dep't, 756 F.3d 1154, 1160 (9th Cir. 2014).

17        The Court finds that there are genuine issues of disputed fact that prevent the application

18   of qualified immunity. Here, the parties dispute both (1) whether Lona was provoked by Plaintiff;

19   (2) what specific actions Lona took on the date of the incident, and (3) whether his actions were

20   reasonable under the circumstances.  Plaintiff's version of the facts is that he was in restraints, he

21   shouted while he was in restraints, he was not a threat, complied with orders, and was not

22   provoking Lona, and that Lona physically assaulted him with such force that he aggravated am

23   existing back injury.  Specifically, Plaintiff alleges that after Lona placed him in handcuffs, with

24   his arms behind his back, Lona punched Plaintiff in the face; tried to put him in a headlock; grabbed

25   his legs below the knee and slammed him onto his back.  Here, the facts alleged "[t]aken in the

26   light most favorable to the party asserting the injury, . . . show the officer's conduct violated a

27   constitutional right." Saucier, 533 U.S. at 201. The law regarding a correctional officers' use of

28   excessive force was clearly established on the date of this incident. See Hudson v. McMillian, 503

1    U.S. 1 (1992); <u>Whitley v. Albers</u>, 475 U.S. 312 (1986). At the time of this incident, it was clearly
2    established that an individual may not be subjected to significant force when he has not resisted,
3    or has merely engaged in passive resistance to, an officer's commands. <u>Gravelet-Blondin v.</u>
4    <u>Shelton</u>, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-
5    trivial force for engaging in mere passive resistance was clearly established prior to 2008"). For
6    these reasons, the Court does not find that Lona is entitled to qualified immunity at this juncture.

7                          **c.   Deliberate Indifference Claim**

8            A prison official violates the Eighth Amendment when he acts with "deliberate
9    indifference" to the serious medical needs of an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828,
10   114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  "To establish an Eighth Amendment violation, a
11   plaintiff must satisfy both an objective standard—that the deprivation was serious enough to
12   constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."
13   <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012).

14           The Court finds that there are genuine issues of disputed fact as to this claim. Plaintiff's
15   sworn statements in his Amended Complaint state that immediately after the January 30, 2018
16   incident, however, "[his] back was never checked due to wrong timing of medical. [He] was taken
17   to the hole . . . stripped of . . . property," and that "[he] asked for an emergency grievance but was
18   denied." ECF No. 19 p.5.  In his response to Defendant's motion, Plaintiff further argues that "the
19   video footage that the A.G. told [him] she wouldn't be able to get would show that [he] never
20   refused medical treatment and <u>refused</u> to sign a waiver of liability for medical treatment because
21   medical was never refused [in the first place]." ECF No. 95 at 2 (emphasis in original).  Plaintiff
22   also argues that "Lona and others knew about [Plaintiff's] back condition because [Plaintiff]
23   personally told them . . . . and [he] can testify to that extent."  <u>Id</u>. at 3.

24           Summary judgment is appropriate only if, viewing the evidence in the light most favorable
25   to the party opposing the motion, the court finds that there is no genuine issue as to any material
26   fact. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d
27   265 (1986).  To reiterate, Plaintiff's presentation of the facts is as follows:  He sustained a back
28   injury when attempting to remove himself from Defendant Dubree's sexual advances in a separate

                                              13

incident, and the injury was exacerbated through his January 30, 2018 incident with Defendant Lona, when Lona violently threw him onto his back while he was in handcuffs. He experienced pain immediately after the incident, and he was not provided medical care. He was asked to waive medical care, and he refused to sign the waiver because he was never offered care. As a result of the January 30, 2018 incident, Plaintiff sustained a level of back injury that he had not previously experienced. He is now taking medication for back related issues. Plaintiff states, in his verified complaint, that the medical crew did not arrive in time for him to be seen after the January 30, 2018 incident, and that he was immediately placed in segregation after the incident. Plaintiff states that he suffered back injuries that were exacerbated by the Lona incident and that came to a head in 2019. He argues that after being punched, placed in a headlock, and taken forcefully to the ground by Lona, Lona prevented Plaintiff from getting requisite medical care by moving him to segregation prematurely, which is an act of deliberate indifference.

The parties dispute the degree of force Lona used on Plaintiff on January 30, 2018, and whether Plaintiff refused medical care or whether Lona called medical to the scene in a timely fashion. There are meaningful disputes relating to both the objective and subjective elements of Plaintiff's Eighth Amendment claim. See, e.g., Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (noting that failure to treat a prisoner's condition" can result in further injury or the "unnecessary and wanton infliction of pain"); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (finding that plaintiff can show deliberate indifference where access to medical staff is meaningless or incompetent). Therefore, Lona's motion for summary judgment as to this claim is denied.

### i. Qualified Immunity

Lona also argues that he is entitled to qualified immunity. In deciding a claim of qualified immunity where a genuine issue of material fact exists, the court accepts the version asserted by the non-moving party. Ellins, 710 F.3d at 1064 (9th Cir. 2013). Here, as referenced in the prior section addressing Plaintiff's Excessive Force claim against Lona, Plaintiff's version of the facts suggests Lona punched him, placed him in a headlock, and pinned him down to the ground after he was already in restraints; that the medical team did not arrive before he was placed in segregation; that he did not sign Defendants' waiver form because he did not waive medical care

14

1   because it was never offered to him in the first place; that the injuries sustained in the January 30,

2   2018 incident did require immediate medical care, and that after he was placed in segregation,

3   Plaintiff requested an emergency grievance form but was not provided with one.  He was out of

4   custody thirteen days later.  The parties do dispute whether medical was called and if meaningful

5   care was provided or offered to Plaintiff, who was still in restraints, before he was transferred to

6   segregation.  It was clearly established law at the time of the incident that deliberate indifference

7   occurs "when prison officials deny, delay or intentionally interfere with medical treatment," and

8   the delay leads to further harm to the inmate.  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th

9   Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th

10  Cir. 1997) (en banc).  The Court finds that there are genuine issues of disputed fact as to this claim

11  and that Plaintiff's asserted version of facts based upon disputed facts establishes a violation of

12  clearly established rights. Therefore, in light of the facts in dispute, the Court denies Lona's claim

13  for qualified immunity related to Plaintiff's Eighth Amendment Deliberate Indifference claim at

14  this juncture.

15          **C.  Plaintiff's Motion for Reconsideration**

16          "As long as a district court has jurisdiction over the case, then it possesses the inherent

17  procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to

18  be sufficient." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885

19  (9th Cir. 2001) (citation and quotation marks omitted).

20          However, "a motion for reconsideration should not be granted, absent highly unusual

21  circumstances, unless the district court is presented with newly discovered evidence, committed

22  clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc.

23  v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted). A motion

24  for reconsideration "may not be used to raise arguments or present evidence for the first time when

25  they could reasonably have been raised earlier in the litigation." Id.

26          Here, Plaintiff asks the Court to reconsider its prior order dismissing Defendants Wharton

27  and Dubree from the case.  However, the Court's prior order only dismisses Defendant Wharton.

28  Defendants Dubree and Wharton were reinstated in the case on Plaintiff's prior Motion for

1    Reconsideration (ECF No. 57), which the Court granted on November 29, 2021.  ECF No. 82.  The

2    Court found that "Plaintiff has complied with the directions of the Court . . . and has otherwise

3    sufficiently satisfied service requirements.  Claims against William Wharton and Mark Dubree are

4    reinstated."  Id.

5         Then, Plaintiff filed a Motion for Default Judgment on December 2, 2021.  ECF No. 83.

6    On May 4, 2022, the Court dismissed all claims against Defendant Wharton without prejudice

7    pursuant to Fed. R. Civ. P.  4(m).  ECF No. 100.  As of today, Defendant Dubree is still a party to

8    the lawsuit.  Plaintiff argues that service has been completed on Mr. Wharton, as the Court itself

9    noted in granting Plaintiff's Motion for Reconsideration.  First, Plaintiff complied with all service

10   requirements.  On March 17, 2021, the U.S.  Marshal service sent back the forms because Plaintiff

11   had not signed the forms. Plaintiff quickly rectified the issue and signed the forms on March 23,

12   2021.  Plaintiff believes that service was completed. In his Motion for Reconsideration, Plaintiff

13   respectfully asks the Court what, if anything, he needs to do further: "There has been ongoing

14   confusion about the service of defendants William Wharton and Mark Dubree.  I've sent the proof

15   of service to the Courts many times now, so I'm very confused as to what the issue is."

16        The Court agrees with Plaintiff.  The May 4, 2023 Order dismissing Defendant Wharton

17   without prejudice was filed in error.  As the Court has stated previously, Plaintiff has complied

18   with service requirements as to Defendants Wharton and Dubree. ECF No. 82.  The Court therefore

19   vacates its prior order (ECF No. 100).

20

21   **VI.    CONCLUSION**

22        **IT IS THEREFORE ORDERED** that Defendant Lona's Motion for Summary Judgment

23   (ECF No. 93) is DENIED.

24        **IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Summary Judgment

25   (ECF No. 98) is DENIED.

26   / / /

27   / / /

28   / / /

16

1    Good cause being found, **IT IS FURTHER ORDERED** that Plaintiff's Motion for

2  Reconsideration (ECF No. 101) of the Court's Order (ECF No. 100) is GRANTED.  The Court

3  VACATES its prior order, and the Clerk of Court is directed to reinstate Defendant William

4  Wharton to this action.

5    **IT IS FURTHER ORDERED** that the Parties have forty-five days from the date of this

6  order to file a Proposed Joint Pretrial Order.

7

8    DATED: <u>March 31, 2023</u>.

9

10

11                                                    _____

12                                                    **RICHARD F. BOULWARE, II**
                                                      **UNITED STATES DISTRICT JUDGE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28